UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

BOBBY L. SHACKELFORD          )
                              )
        Plaintiff,            )
                              )
   vs.                        )
                              )
CHAMPION LONG-TERM            )    CV-98-L-2939-NW
DISABILITY BENEFITS PLAN      )
FOR CERTAIN HOURLY            )
EMPLOYEES and CHAMPION        )
INTERNATIONAL                 )
CORPORATION,                  )
                              )
        Defendants.           )

FILED AUG 16 2000
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
AUG 16 2000

## MEMORANDUM OPINION

This cause comes before the court on defendants' motion for summary judgment filed February 15, 2000. After careful consideration of the briefs and evidentiary materials submitted, this court finds, for the reasons herein, that defendants' motion is due to be GRANTED.

### Facts

In January 1995, plaintiff slipped while working as a Third-Hand Operator at Champion International Corporation's ("Champion") Courtland, Alabama mill. Following his injury, he applied for and began receiving short-term disability benefits on

21

January 23, 1995. After receiving six months of short-term disability benefits, in July 1995, plaintiff became elgible for long-term disability under the Plan. Plaintiff received long term disability benefits until his claim was denied on September 1997 because he failed to meet the more restrictive definition of "Total Disability" that takes effect 30 months from the onset of a disability.

The Plan defines "total disability" after thirty months to mean "the inability to engage in any occupation or business for wage or profit for which he is or becomes reasonably qualified by training, education, or experience." Up until this point, a claimant need only show that he is disabled from his job with Champion.[1] In addition, under the terms of the Plan, the Pension and Employment Benefits Committee is the Plan Administrator within the meaning of Section 402(a)(2) of ERISA and has "the power and authority in its sole, absolute and uncontrolled discretion to control and manage the operation and administration of the Plan and shall have all powers necessary to accomplish these purposes." The Plan also states, in Section 2.1(z)(iv), that "if there is a difference of opinion as to whether a

---

[1] Section 2.1(z)(i) of the Plan states that during the first thirty months, total disability is defined as "the inability of a Participant to perform the duties of his employment with the Employer . . . ."

Participant meets the requirements of Total Disability, the decision of the Plan Supervisor shall be final and conclusive."

The Pension and Employee Benefits Committee has delegated its authority and the responsibility for making final benefit decisions under the Plan to the Claims Review Committee. Certain duties in the administration of the Plan have been further delegated to a third party administrator. Effective November 1, 1995, Champion retained CORE, Inc. to handle routine administration and medical review of claims for benefits under the Plan. As one of CORE, Inc.'s primary duties, it reviews medical records provided by claimants and their physicians and provides Champion with a recommendation as to whether benefits should be granted or denied. The Claims Review Committee at Champion relies on CORE, Inc.'s expertise in assessing the claimant's medical records.

In September 1997, CORE, Inc., sent Dr, Neil Clement, plaintiff's treating physician a Modification Checklist to determine if plaintiff was capable of performing "any occupation." Dr. Clement completed this Modification Checklist, indicating that plaintiff could work eight hours a day, five days a week. Dr. Clement also indicated that plaintiff could lift up to twenty pounds and walk fifty feet. Dr. Clement further found that plaintiff did not require any modifications for upper

extremity use, overhead reaching, or lower extremeity use on his right side.

As part of the Plan requirements for the review process, plaintiff was also given an independent medical examination by Dr. Eric Beck. Dr. Beck, on his completed Modification Checklist and Independent Medical Evaluation Report, indicated that plaintiff could work eight hours a day, five days a week. Dr. Beck further indicated that plaintiff could return to work with modifications "immediately." Dr. Beck further opined that "[i]t is my opinion . . . that the patient could work at a sedentary to light duty position," and he restricted plaintiff from engaging in activities such as crawling, climbing, working on unprotected heights or ladders, crouching, or stooping. Following this list of restrictions, Dr. Beck again opined that "the patient may work an eight hour day with these restrictions."

On January 23, 1998, Myrtice Carr, a Licensed Professional Counselor, completed a vocational assessment of plaintiff. She reported that plaintiff scored 50 on an intelligence test, indicating intellectual functioning in the mild to moderately mentally handicap range. She also reported that plaintiff scored at a second grade level in reading, spelling, and arithmetic on another test. She reported that these test results showed functional illiteracy with an ability to be trained via hands on

demonstration only and that such training would require repetitive demonstration over a period of time for plaintiff to learn new tasks.  Ms. Carr determined that based on plaintiff's work history, there were fourteen job skills still feasible for plaintiff following his injury.  However, she also stated that he would require retaining for each of these jobs and that none of these jobs were located within commuting distance for plaintiff.

Based on the aforementioned reports and evaluations, on September 22, 1997, CORE, Inc. informed plaintiff that his claim for long term benefits was denied because he was "[n]ot disabled as defined in the Plan."  The letter referred to plaintiff's treating physician's report as well as the Plan definition of "Totally Disabled."

Plaintiff requested an additional review under the Plan.  On April 13, 1998, CORE, Inc. provided Champion a report reflecting its review of plaintiff's March 27, 1998 Independent Medical Examination and recommended upholding the denial of benefits under the Plan, "as the employee has been found to be able to perform sedentary to light duty work, 8 hours per day, 5 days per week by an able IME [Independent Medical Examiner]."  Champion informed plaintiff through his attorney that Champion had decided to uphold the original denial of benefits.  As factual basis for the denial, to letter referenced: (1) attending physician Dr.

Neil Clement's written release to work 8 hours a day, 5 days a week, and (2) Dr. Beck's March 27, 1998 independent medical evaluation which found plaintiff capable of performing sedentary to light work 8 hours a day, 5 days a week. In addition, the letter stated that plaintiff was entitled to further review within sixty days of his receipt of the letter.

Plaintiff filed another request for review. William Foster, Senior Associate Counsel for Champion, acknowledged the request on September 4, 1998 and informed plaintiff that the Claims Review Committee would review the entire record and that if plaintiff wished to submit any additional documentation, to do so prior to September 24, 1998. Plaintiff did not provide any additional documentation to Champion.

On September 24, 1998, the Claims Review Committee met to discuss plaintiff's appeal of denial. On October 23, 1998, William Foster wrote plaintiff through his attorney and informed him that the Claims Review Committee decided to uphold the initial decision to terminate his long term disability benefits. The letter again referenced Dr. Clement's report, Ms. Carr's report, and Dr. Beck's report.

## Motion for Summary Judgment

**A.  Scope of Review**

In reviewing a motion for summary judgment, the motion is

granted if there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in the State of Alabama, 941 F.2d 1428, 1437 (11th Cir. 1991). As there is no genuine issue as to any material fact, the only question left to be resolved is whether plaintiff has stated any claim under which he can recover.

B. **Standard of Review for Fiduciary Decisions**

In determining whether the motion for summary judgment should be granted as to plaintiff's claim for benefits, the claim decision "is to be reviewed under a de novo standard unless the benefit Plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101 (1989). When an administrator or fiduciary has been given such discretionary power, the court may only review the actions of a fiduciary under the arbitrary and capricious standard of review. Id. The arbitrary and capricious standard requires the court "to determine whether there was a reasonable basis for [Champion's] decision, based upon the facts known to the administrator at the time the decision was made." Jett v. Blue Cross and Blue Shield of Alabama, Inc., 890 F.2d 1137, 1139 (11th Cir. 1989). Since the Plan at issue does grant such discretionary power, Champion's

decision will be reviewed under the arbitrary and capricious standard.

In light of the fact that a conflict of interest may exist in the present case, the Eleventh Circuit has expounded a heightened standard of review for such situations. Heightened scrutiny under the arbitrary and capricious standard applies where a "plan beneficiary demonstrates a substantial conflict of interest on the part of the fiduciary responsible for benefits determinations." Buckley v. Metropolitan Life, 115 F.3d 936, 939 (11th Cir. 1997). To invoke this standard of review, the plaintiff must first demonstrate a substantial conflict of interest. Here, plaintiff advances only conclusory allegations that the defendant has an inherent conflict of interest without presenting any corroborating, supporting, or probative evidence. Without anything but a mere allegation, the court is to assume that the Plan Administrator acted neutrally. It is the burden of the plaintiff to demonstrate a substantial conflict of interest and the court finds that plaintiff has not carried his burden. Therefore, in the absence of a showing by plaintiff that there is evidence to support a finding that a substantial conflict of interest existed, this court will review the decision under the arbitrary and capricious standard of review.

**C.   Application**

The court may disturb the decision of the [Claims Review Committee] only if the plaintiff has established that the decision . . . was arbitrary and capricious." <u>Griffs v. Delta Family-Care Disability</u>, 723 F.2d 822, 825 (11th Cir. 1984). Champion interpreted the definition of "total disability" as defined in the Plan and determined that plaintiff's disability did not rise to the level of "total disability" as set out in the Plan. There is no dispute that plaintiff was disabled to some extent; the dispute rests in the extent of his disability. Using the facts before Champion at the time of its decision, it was neither arbitrary nor capricious for Champion to determine that plaintiff's disability did not rise to the level of "total disability." The objective of the arbitrary and capricious standard is to determine whether Champion's interpretation of the Plan is a reasonable one, not whether it is the correct one or the interpretation the court would have made on its own. See <u>Dyce v. Salaried Employees Pension Plan of Allied Corp.</u>, 15 F.3d 163 (11th Cir. 1994).

Defendant correctly asserts <u>Paramore v. Delta Airlines</u>, 129 F.3d 1446 (11th Cir. 1997), to argue that there was no abuse of discretion. In <u>Paramore</u>, the court found no abuse of discretion where, although plaintiff's treating physician certified plaintiff's disability, another physician stated that plaintiff

could perform some form of sedentary work, and subsequent medical evaluations contained "sporadic, internally inconsistent statement." Champion, just as the defendants in Paramore did, weighed the evidence before it, reasonable reconciled the inconsistencies, and rendered a reasonable determination of whether the plaintiff met the Plan's definition of "total disability." See Brown, 898 F.2d at 1571-72; See Paramore, 129 F.3d at 1447-1452. The information available to Champion's Claims Review Committee is more than sufficient to sustain the denial of plaintiff's benefits.

## Conclusion

Therefore, based on the foregoing reasons, summary judgment is appropriate as to each of plaintiff's claims. As set out in the accompanying order, this court is today granting the defendant's motion for summary judgment.

DONE this 16th day of August 2000.

SEYBOURN H. LYNNE
SENIOR JUDGE